# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CINDI SUE S.,**[1] | Case No. 6:19-CV-1484-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Kevin Kerr, Schneider Kerr & Robichaux, PO Box 14490, Portland, OR 97293. Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Justin L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, Judge**

      Plaintiff, Cindi Sue S., seeks review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

under Title II of the Social Security Act. For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for disability insurance benefits (DIB) on February 11, 2016, alleging disability beginning on June 1, 2013. AR 15. Plaintiff was born September 16, 1964. AR 249. She has an eleventh grade education and previously worked as a caregiver, housekeeper, and janitor. AR 184–85. Plaintiff alleged disability due to physical and mental impairments, including sleep apnea, shoulder injuries, numbness and decreased hand strength, chronic headaches, chronic fatigue, insomnia, post-traumatic stress disorder (PTSD), learning disability, and depression. AR 183. The Commissioner denied her application initially and upon reconsideration. AR 79–87. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 88–89. A hearing was held on May 23, 2018. AR 15. After the hearing, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR 25. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  AR 1–4.

### B. The Sequential Analysis

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" ("RFC"). This is an assessment
        of work-related activities that the claimant may still perform on a regular
        and continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. AR 17.

At the first step of the disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2013, her alleged onset date. *Id.*

At step two, the ALJ found the following severe impairments: plantar fasciitis in the right lower extremity, diabetes mellitus, obesity, obstructive sleep apnea, mild depressive disorder, post-traumatic stress disorder (PTSD), and fibromyalgia. AR 17–18. The ALJ found that the other medical conditions discussed in the medical records or alleged by Plaintiff were not severe impairments. AR 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R.

§§ 404.1520(d), 404.1525, 404.1526. AR 18–20. Instead, the ALJ found that Plaintiff had the residual functional capacity (RFC) to "perform medium work as defined in 20 C.F.R. §404.1567(c). The claimant should avoid concentrated exposure to workplace hazards. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks." AR 20.

At step four, the ALJ found Plaintiff capable of performing past relevant work as a housekeeper (DOT 323.687-014, SVP 2, Light). AR 23. The ALJ determined that Plaintiff had performed housekeeping work "within the last 15 years, long enough to learn it, and at the level of substantial gainful activity," and that the work did not require the performance of activities precluded by Plaintiff's RFC. *Id.*

Despite finding Plaintiff capable of performing past relevant work at step four, the ALJ continued on to step five and made the alternative finding that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, including hand packager (DOT 920.587-018), night cleaner (DOT 358.687-010), and clean up worker (DOT 381.687-018). AR 24-25. Thus, the ALJ ruled that Plaintiff is not disabled. *Id.*

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that she was not disabled. She argues that the ALJ erred in making that determination by: (A) improperly evaluating medical opinion evidence; (B) failing to conduct an adequate evaluation at step three and failing to develop the record; (C) improperly evaluating Plaintiff's credibility; (D) improperly evaluating lay witness statements; and (E) failing to conduct an adequate analysis at steps four and five. Each argument will be addressed in turn.

**A. Evaluation of Medical and Other Opinion Evidence**[2]

**1. Legal Standards**

An ALJ must consider, evaluate, and explain the weight given to the opinions of medical professionals and others who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 06-03p, *available at* 2006 WL 2329939. Plaintiff contends that the ALJ erred in evaluating the opinions of Dr. Rachel Nosce and Candace Mottweiler. ECF 14 at 10–14.

The Ninth Circuit distinguishes between three types of medical opinions: those from treating sources, examining sources, and non-examining sources. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester*, 81 F.3d at 830. A treating physician's report that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide only "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can comply with this mandate by providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints,

---

[2] Newly promulgated regulations changed how an ALJ must weigh medical opinion evidence for claims filed after March 27, 2017. Revisions to Rules the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on February 11, 2016, the new regulations do not apply to her case.

inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040.

### 2. Analysis

#### a. Rachel Nosce, M.D. – Treating Physician

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Nosce, Plaintiff's primary care physician. ECF 14 at 10–12. The ALJ offered specific, legitimate reasons for discounting of Dr. Nosce's opinion and therefore the finding is supported by substantial evidence.

On May 8, 2018, Dr. Nosce completed a questionnaire about Plaintiff's condition. AR 695–98. Dr. Nosce indicated Plaintiff could lift and carry only items less than ten pounds, could stand or walk for one hour at a time and no more than three hours in an eight-hour day, would be off task for twenty percent of the work week, and would miss more than sixteen hours a month due to her impairments. *Id.* This assessment of Plaintiff's level of impairment was contradicted by Dr. William Nisbet and Dr. Susan Moner, state agency consultants who assessed Plaintiff's limitations and found that she could perform work at the "medium exertion level" but should avoid concentrated exposure to workplace hazards. AR. 21. Because Dr. Nosce's opinion was contradicted by other physicians, the ALJ was required to provide "specific, legitimate reasons" for discrediting the opinion. *See Murray*, 722 F.2d at 502.

The ALJ offered two specific, legitimate reasons for rejecting Dr. Nosce's assessment of Plaintiff's limitations. First, the ALJ noted that Dr. Nosce's opinion was not consistent with the medical records, including Dr. Nosce's own treatment notes. AR 23. Contradictions between a doctor's opinion and her own clinical notes and observations is an appropriate factor for consideration by an ALJ. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (upholding an ALJ's rejection of a treating psychologist's contradicted opinion because it conflicted with his own treatment notes). Here, the ALJ noted that Dr. Nosce's treatment notes

indicated that Plaintiff was happy with her pain control and that her fibromyalgia was improving with treatment and medication. AR 22. Dr. Nosce's treatment notes also showed that Plaintiff's depression, anxiety, hypertension, diabetes, and sleep problems improved with medication. AR 408– 11, 418–19, 543–46. By pointing to the contradictions between Dr. Nosce's treatment notes and the severe limitations she assessed, the ALJ identified a specific, legitimate reason to discount the assessment.

Second, the ALJ found that Dr. Nosce's assessment was inconsistent with Plaintiff's own reported activity level. AR 23. Specifically, the ALJ highlighted that Plaintiff reported caring for two children one day a week for four hours and working as a housekeeper for two hours a week. *Id*. The ALJ found that both of these activities "would keep [Plaintiff] on her feet for more than an hour at a time." *Id*. Elsewhere in the decision, the ALJ noted that Plaintiff maintained the ability to prepare simple meals, pay bills, shop, and drive. AR 19. The ALJ found that these activities were not consistent with the limitation levels described by Dr. Nosce. When a physician assesses limitations that appear to be inconsistent with the claimant's level of activity, the ALJ can discount the opinion on that basis. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."). Though Plaintiff may disagree with the ALJ's evaluation of the opinion evidence, it is supported by substantial evidence in the record and this Court does not have the discretion to second-guess it. *Batson,* 359 F.3d at 1193 (when evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the reasonable interpretation of the ALJ).

Thus, the ALJ offered two specific, legitimate reasons for discounting Dr. Nosce's opinion and substantial evidence supports the finding.

### b. Candace Mottweiler

Plaintiff further challenges the ALJ's rejection of some findings in the medical source statement provided by Candace Mottweiler, a mental health provider. "[O]nly licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)). "An ALJ may discount the opinion of an 'other source,' . . . if she provides 'reasons germane to each witness for doing so.'" *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citation omitted). Here, both sides agree that Ms. Mottweiler is considered an "other source" under the relevant regulations and that the germane reasons standard applies. *See* ECF 14 at 14; ECF 16 at 7.

The ALJ provided germane reasons for the weight given to Ms. Mottweiler's findings. Ms. Mottweiler had been seeing Plaintiff for less than three months when she completed the questionnaire submitted for this case. AR 21. She reported that Plaintiff would have mild limitations in her ability to understand, remember, and apply information, mild to moderate limitations in her abilities to interact with others and adapt or manage herself, and moderate limitations in her ability to concentrate, persist, or maintain pace. AR 691–94. The ALJ found these reported limitations were consistent with the record as a whole and gave them some weight, noting that although Ms. Mottweiler had not treated Plaintiff for long, she had access to Plaintiff's records from prior counselors. AR 21. Ms. Mottweiler also reported that she "suspect[ed]" Plaintiff would have difficulty sustaining attention for a full workday, that efforts to focus would give Plaintiff high levels of stress, and that Plaintiff's anxiety and depression would lead to missed days of work. AR 691–94. Because Ms. Mottweiler framed these items as suppositions rather than findings supported by objective evidence, the ALJ gave them no weight. AR 21. Ultimately, it is up to the ALJ to "decide which medical opinions to credit." *Carmickle v.*

*Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). An ALJ need not adopt a medical opinion where, as here, it offers only vague conclusions that are "not useful . . . [in] specify[ing a claimant's] functional limits." *Ford*, 950 F.3d at 1156. Thus, the ALJ provided germane reasons for the weight given to Ms. Mottweiler's opinion evidence and did not commit error.

## B.    Evaluation at Step Three

At step three, the ALJ must determine whether a claimant's severe impairment "meet[s] or equal[s]" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Plaintiff claims the ALJ erred at step three by failing to consider Listing 14.09D in regard to her fibromyalgia, failing to consider Listing 11.02 in regard to her migraine headaches, and failing to develop the record. ECF 14 at 14–15.

### 1. Legal Standards

The impairments described in the Listings are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant who has an impairment that meets the criteria of a Listing demonstrates a higher level of severity in that impairment and is precluded from performing any gainful activity, not just substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The Listings describe "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A mere diagnosis is insufficient to meet or equal a listed impairment. 20 C.F.R. § 404.1525(c). Rather, to meet a listed impairment, a claimant must "show that [her] impairment . . . meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those

criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (emphasis in original). The claimant bears the burden of proving her impairments meet or equal a Listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

**2. Analysis**

**a. Fibromyalgia**

The ALJ did not err in the step three evaluation of Plaintiff's fibromyalgia. Because fibromyalgia is not an impairment described in the Listings, the ALJ must "determine whether [it] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2p, 2012 WL 3104869 at *6. Here, the ALJ chose the latter and found that Plaintiff's severe impairments, which included fibromyalgia among other impairments, did not medically equal a Listing in combination with at least one other medically determinable impairment. AR 18–20. The ALJ was not required to provide an extensive discussion of equivalence because Plaintiff had failed to offer a plausible theory as to how her fibromyalgia or combination of impairments medically equaled the severity of a Listed impairment. *See Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

Further, Plaintiff's ability to work part-time as a housekeeper for much of the relevant period also undercuts her argument that her condition was severe enough to prevent *any* gainful activity, as is required to qualify as disabled at step three.

### b. Migraines

The ALJ also did not err in the step three evaluation of Plaintiff's migraines. Like fibromyalgia, migraines are not impairments described in the Listings. Therefore, Plaintiff had to show that her migraines were medically equivalent to the closest analogous listing in order to be found disabled at step three. 20 C.F.R. § 404.1526(b)(2). Plaintiff made no such showing. She did not allege that her migraines met a Listed impairment during the administrative hearing, nor did she raise such an argument with the Appeals Council in her requested for review. AR 32–48, 137–39, 243–47. Plaintiff argues that the ALJ should have further developed the record regarding her migraines and ordered a consultative examination. ECF 14 at 15. However, as discussed above, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. Thus, Plaintiff's failure to present a theory of equivalence between her migraines and an impairment described in the Listings is fatal to her claims that the ALJ erred in failing to compare her migraines to a specific listing and develop the record.

## C.    Evaluation of Plaintiff's Subjective Symptom Allegations

Plaintiff claims the ALJ improperly discounted Plaintiff's subjective symptom testimony "by engaging in a general recitation of the medical evidence, with no specificity as to what testimony was discredited or why." ECF 14 at 19.

### 1. Legal Standards

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez. v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented

objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

In Plaintiff's application materials, she claimed to suffer from PTSD, depression, a torn muscle in her right shoulder, a chronic injury in her left shoulder, chronic fatigue, a learning

disability, sleep apnea, decreased hand strength and numbness, insomnia, and chronic headaches. AR 51.

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 20. In applying the second step of the required analysis, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*.

Plaintiff asserts the ALJ's committed error by "engaging in a general recitation of the medical evidence, with no specificity as to what testimony was discredited or why." ECF 14 at 19. However, the ALJ, over the course of four pages, provided sufficient rationales for rejecting portions of Plaintiff's symptom testimony. AR 24–28. The ALJ's primary two rationales included: (1) that Plaintiff's allegations of impairments were incompatible with evidence of improvement in the record; and (2) that Plaintiff's allegations of impairments were incompatible with her level of activity. AR 17, 19, 21–23.

### a. Evidence of improvement

A claimant's course of treatment is relevant evidence for an ALJ to consider. 20 C.F.R. § 404.1529(c)(3)(iv). Evidence showing improvement with treatment is a valid basis to discount a claimant's testimony of disabling symptoms. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). An ALJ's finding that a claimant's chronic condition is under control or stable permits an inference that the claimant can work and is not disabled. *Purvis v. Comm'r of Soc. Sec. Admin.*, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999).

Here, the ALJ noted that the record showed Plaintiff's depression, PTSD, plantar fasciitis, fibromyalgia, and sleep apnea appeared to be well controlled by her current medications, counseling,

and treatments. AR 21–22. With regard to Plaintiff's chronic fatigue and insomnia, the ALJ noted

that Plaintiff reported she was sleeping "much better" while using a continuous positive airway

pressure ("CPAP") breathing device. AR 22. The record also showed that Plaintiff's diabetes mellitus

and hypertension were controlled with medication, and changes to her medication helped with her

fibromyalgia and "markedly improved" her migraines and anxiety. AR 306–14, 418–19.

The ALJ reasonably considered evidence in the record relating to Plaintiff's course of

treatment to reach the conclusion that the limiting effects described by Plaintiff were not consistent

with the record. Accordingly, the ALJ's finding is supported by substantial evidence.

### b. Plaintiff's activity level

An ALJ must consider a claimant's activities when assessing subjective complaints. 20

C.F.R. § 404.1529(c)(3)(i). An ALJ may rely on an activity to discount a claimant's subjective

complaints if (1) it is transferrable to work, or (2) the activity is inconsistent with alleged

symptoms. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that Plaintiff's

documented activity levels were inconsistent with the limitations she alleged. Specifically, the

ALJ noted that Plaintiff maintained the ability to care for two young children for four hours a

week, work as a housekeeper for two hours a week, attend to her own personal care, prepare

simple meals, shop, drive, and manage her finances. AR 19, 23. The ALJ reasonably found that

Plaintiff's continued ability to perform these activities contradicted the significant limitations

Plaintiff alleged.

In sum, the ALJ gave clear and convincing reasons for discounting Plaintiff's testimony.

He identified what testimony was not credible and what evidence undermined Plaintiff's

complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In light of these reasons, any

other errors did not "negate the validity of the ALJ's ultimate conclusion" as to Plaintiff's

testimony and were thus harmless. *Batson*, 359 F.3d at 1197. Plaintiff's briefing presents an

alternate interpretation of the evidence in the record. But "'[w]here the evidence is susceptible to more than one rational interpretation,' the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (quoting *Andrews*, 53 F.3d at 1039–40).

**D.   Evaluation of Lay Witness Statements**

Plaintiff argues that the ALJ improperly rejected the lay witness testimony of Plaintiff's daughters, domestic partner, employer, and friend. ECF 14 at 15–18. ALJ's are required to consider statements from lay witnesses and must offer germane reasons for discounting such statements. *Molina*, 764 F.3d at 1111. The witness statements here described functional limitations largely similar to those alleged by Plaintiff, including difficulties lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, using her hands, and problems with memory and concentration. *See, e.g.*, AR 192–99, 223–39, 241–42.

The ALJ rejected these witness statements but failed to offer germane reasons for doing so. Instead, the ALJ discredited all of the witness statements at once, saying that the witnesses' relationships with Plaintiff meant their testimony could not be trusted. AR 23. However, while the sweeping discrediting of these witnesses without sufficient justification constituted error, the error was harmless. The discredited witness statements described functional limitations that mirrored those alleged by Plaintiff. The Ninth Circuit has recognized that an "ALJ's failure to give witness-by-witness reasons for rejecting the lay testimony d[oes] not alter the ultimate nondisability determination" when the ALJ "validly rejected" a claimant's symptom allegations that mirrored those of the lay witnesses. *Molina*, 674 F.3d at 1122. This is because "an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Id.* (internal quotation marks omitted, brackets in original). As described above, the ALJ provided

legally valid reasons for rejecting Plaintiff's symptom allegations. Because the allegations of the rejected lay witnesses mirrored Plaintiff's allegations, the rationale for rejecting Plaintiff's allegations applies to the witnesses' statements. Thus, the ALJ's error was harmless.

**E.  Evaluations at Steps Four and Five**

Finally, Plaintiff alleges that the ALJ failed to conduct an adequate analysis at steps four and five. ECF 14 at 20. At step four, the ALJ is required to make findings as to the claimant's RFC, the physical and mental demands of her past jobs, and whether her RFC would permit her to return to her past jobs. SSR 82-62, *available at* 1982 WL 31386, at *3. Here, the ALJ assigned Plaintiff an RFC that accounted for her functional limitations by restricting her to medium exertional work with several non-exertional, environmental, and mental limitations. AR 20. Next, the ALJ elicited testimony from a vocational expert who determined that a hypothetical claimant of Plaintiff's age, education, work experience, and RFC could perform her past relevant work as a housekeeper. AR 44. Thus, the ALJ properly determined that, based on the record, Plaintiff could perform her past relevant work and was not disabled within the meaning of the act. AR 23.

Likewise, the ALJ's alternative step five finding was properly based on the assessed RFC and the vocational expert's testimony. AR 24–25; *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The vocational expert testified that a hypothetical person of Plaintiff's age, education, work experience, and RFC could perform work, including as a hand packager, night cleaner, and clean up worker. AR 44–45.

Plaintiff claims that the ALJ committed error at steps four and five because the RFC and hypothetical questions presented to the vocational expert were incomplete. ECF 14 at 20. Specifically, Plaintiff argues that the RFC and vocational hypotheticals did not adequately

account for the limitations that Dr. Nosce assessed. *Id*. However, as discussed above, the ALJ properly considered and rejected portions of Dr. Nosce's findings. A claimant does not establish than an ALJ's vocational findings are incorrect by simply restating her arguments that the ALJ improperly discounted certain evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008). Because the ALJ properly considered and weighed the medical source testimony in formulating Plaintiff's RFC, no error was committed by posing hypotheticals to the vocational expert based on it.

Therefore, the ALJ conducted an adequate analysis at steps four and five.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 31st day of December, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge